IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| THE ESTATE OF GEORGE J. JANSEN, ) <br> By and Through his Personal Representative ) <br> EMILY JANSEN, and EMILY JANSEN, ) <br> ALLISON GRANT, ANNE SCHEU and ) <br> GEORGE M. JANSEN in their Individual ) <br> Capacity ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> VALMONT HIGHWAY ) <br> DISTRIBUTION LIMITED ) <br> (f/k/a Armorflex International Limited) ) <br> Steve Edwards ) <br> 12 Offenhauser Drive ) <br> East Tamaki, Auckland, New Zealand ) <br> ) <br> Defendant. ) | JURY TRIAL DEMANDED <br><br> Case No. <br><br> Division No. |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Emily Jansen, as the Personal Representative of The Estate of George J. Jansen, and Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen in their Individual Capacity, by and through Counsel, and for their causes of action against defendant Valmont Highway Distribution Limited, f/k/a Armorflex International Limited, ("VHDL"), states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Emily Jansen is a citizen and resident of the State of Kansas, residing at 12835 Bluejacket, Overland Park, Kansas, 66213.

2. Plaintiff Emily Jansen is the surviving spouse of decedent George Jansen and, as such, is the proper party to bring this action for the wrongful death of George Jansen under R.S.Mo § 537.080. As personal representative of the Estate of George Jansen, Emily Jansen is the proper

1
Case 4:23-cv-00032-BCW   Document 1   Filed 01/16/23   Page 1 of 14

party to bring the claims for lost chance of recovery or survival set forth herein under R.S.Mo § 537.020.

3. Plaintiff Allison M. Grant is the surviving daughter of decedent George Jansen and, as such, is the proper party to bring this action for the wrongful death of George Jansen under R.S.Mo § 537.080. Plaintiff Allison Grant resides at 4407 West 158th Terrace, Overland Park, Kansas, 66224.

4. Plaintiff Anne E. Scheu is the surviving daughter of decedent George Jansen and, as such, is the proper party to bring this action for the wrongful death of George Jansen under R.S.Mo § 537.080. Plaintiff Anne Scheu resides at 11911 West 131st Terrace, Overland Park, Kansas, 66213.

5. Plaintiff George M. Jansen is the surviving son of decedent George Jansen and, as such, is the proper party to bring this action for the wrongful death of George Jansen under R.S.Mo § 537.080. George M. Jansen resides at 12835 Bluejacket, Overland Park, Kansas, 66213.

6. Defendant VHDL is a foreign for-profit corporation organized and existing under the laws of New Zealand and is a wholly owned subsidiary and/or operational unit or division of Valmont Industries, Inc. with its principal place of business in East Tamaki, Auckland, New Zealand. Valmont Highway Distribution Limited may be served at 12 Offenhauser Dr., East Tamaki, Auckland, New Zealand.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3).

8. This Court has diversity subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

9. This Court has personal jurisdiction over VHDL pursuant to R.S.Mo. § 506.500, including but not limited to subsections (1) and (3), in that Plaintiffs' causes of action against VHDL arise from Defendant's transaction of business within this State and/or its commission of tortious acts within this State.

10. This Court has personal jurisdiction pursuant to the due process clause of the 14th Amendment of the Constitution of the United States.

11. VHDL had substantial, systematic, and continuous contact with this State such that the exercise of personal jurisdiction over VHDL is appropriate.

12. VHDL purposefully availed itself to the privilege of conducting business within this State and has the requisite minimum contacts with this State such that maintenance of this suit does not offend traditional notions of fair play and substantial justice and that VHDL should reasonably anticipate being hauled into Court here.

13. Armorflex International Limited ("Armorflex") designed a guardrail end treatment known as X-Lite.

14. On December 1, 2006, Armorflex entered into an Exclusive License Agreement ("ELA") with Barrier Systems, Inc. to license their products, which later included X-Lite. Armorflex's actions and decisions placed X-Lite in the stream of commerce, wherein it was reasonably anticipated that a X-Lite would be installed along Interstate 70 in Saline County, Missouri.

15. Barrier System, Inc. was a California corporation.

16. Lindsay Corporation and/or Lindsay Transportation Solutions Sales & Services ("Lindsay") acquired Barrier System, Inc. Lindsay is a Nebraska highway safety products company.

17. In 2013, Valmont Industries, Inc. by and through its subsidiary VHDL, acquired Armorflex and its products, including the X-Lite. The acquisition amounted to a merger or *de facto* merger wherein liability for defects associated with X-Lite was assumed by VHDL.

18. The ELA ultimately became a contract between VHDL and Lindsay.

19. The ELA amounted to a *de facto* joint venture agreement drafted by Amorflex to ensure its continued control and ownership over its products. Specifically, the ELA provided that:

   a. VHDL was to transmit to Lindsay all of the technical information for its products, which eventually included X-Lite. Technical information included the design and specifications of machinery necessary to manufacture the X-Lite, materials and methods for processing, all blueprints, plans, specifications, and trade secrets.

   b. VHDL was to provide up to five full working days of technical engineering support to Lindsay each contract year.

   c. Lindsay would use all reasonable endeavors to pursue the development and commercialization of X-Lite in all countries, except New Zealand and Australia, which included Missouri, USA.

   d. Lindsay would pay a license fee and royalties to VHDL in United Sates currency.

   e. Lindsay would periodically deliver a written report with the number of sold and returned X-Lites.

   f. Lindsay was required to keep full, true, and accurate records and books of account containing all particulars relating to sales, which would be open to VHDL's inspections.

g. VHDL had the authority to enter Lindsay's factories, offices, warehouses, and other facilities that were connected to the manufacture of X-Lite to ensure its satisfaction with Lindsay's compliance with the ELA.

h. Lindsay was required to indemnify VHDL of the costs and attorney's fees accrued as a result of VHDL's involvement in a product liability action.

i. Lindsay was prohibited from pleading over or against VHDL for any defects or faults in the design, manufacture, or specifications of X-Lite.

j. Lindsay was required to mark X-Lite's patent number on all products, packaging, brochures, manuals, and documents describing X-Lite in a prominent position.

k. The ELA was governed and construed in accordance with the laws of the state of California, USA.

20. VHDL had significant continued involvement with Lindsay and X-Lite and specifically targeted Missouri.

21. According to motions filed by the Missouri Highway and Transportation Commission ("MHTC") in response to VHDL's motion to dismiss in case number 20AC-CC00227, MHTC provided to the court these additional facts supporting the significant involvement VHDL had with Lindsay and X-Lite:

a. On November 16, 2010, Lindsay and VHDL held a meeting for the members of the "X-Lite Product Development Team", which included individuals from both VHDL and Lindsay.

b. In 2011, VHDL sent correspondence to the Federal Highway Administration ("FHWA") requesting certification of X-Lite for use on the

5

National Highway Systems, which included Interstate 70 in Saline County, Missouri.

c. VHDL's submission to FHWA included drawings of the X-Lite on the company's letterhead and drawing papers.

d. There were discussions between VHDL and Lindsay regarding a draft of the correspondence sent to FHWA before it was sent.

e. There were discussions between VHDL and Lindsay regarding the cost estimates for X-Lite.

f. VHDL and Lindsay discussed the costs of competing products.

g. VHDL and Lindsay collaborated on preparing a presentation on X-Lite to be given at an industry conference at the request of FHWA.

h. From 2011 to 2014, VHDL and Lindsay collaborated on X-Lite's installation instructions/manual and VHDL provided technical support to Lindsay.

i. VHDL provided technical support to Lindsay various times, including a nut bolt issue in the X-Lite.

j. Lindsay and VHDL jointly celebrated X-Lite's success.

k. In 2014, VHDL sent correspondence to Lindsay celebrating the removal of a competitor's product from the Nevada Department of Transportation's approved product list.

l. VHDL and Lindsay discussed maintenance concerns of the Montana Department of Transportation in a joint venture to market X-Lite.

m. In June of 2015 VHDL was supplying component parts of X-Lite.

n. VHDL thanked Lindsay for their shared commitment to ensuring the proper performance and function of X-Lite.

o. VHDL conducted prototype testing for X-Lite.

22. VHDL designed, tested, and sought certification of X-Lite and sought out, contracted with, and maintained a decade-long relationship with Lindsay for the manufacture and distribution of the X-Lite in the United States.

23. VHDL choose a United States corporation as the sole distributor for X-Lite because VHDL's purpose was to target the Unites States, which included Missouri. VHDL was successful as it profited from over 655 X-Lites that were sold in Missouri.

24. VHDL could have, but chose not to, specifically exclude Missouri from the territory that Lindsay was to commercialize under the ELA if it did not want or intend to profit off the sales of X-Lites in Missouri.

25. VHDL could have, but chose not to, specifically exclude Missouri from the territory that Lindsay was to commercialize under the ELA if it did not want or intend to avail itself to possible suits in Missouri.

26. 655 X-Lites were sold by VHDL's chosen distributor, Lindsay, in Missouri. It was not a single isolated sale.

27. VHDL directly profited off each of the 655 X-Lite sold in Missouri.

28. VHDL engaged in substantial and not isolated activity within the state of Missouri and Plaintiffs' action arises from VHDL committing a tortious act within Missouri and/or causing injury to persons or property within Missouri arising out of an act or omission by VHDL.

29. On February 6, 2017, at approximately 9:25 a.m., George Jansen was driving a 2016 Chevrolet 1500, vehicle identification number 3GCUKNEHOGG244826 ("the Chevrolet"),

traveling eastbound on Interstate 70 in Saline County, Missouri at or near the location of the subject X-Lite.

30. While Mr. Jansen was driving, his vehicle veered to the left and struck the X-Lite, which resulted in the X-Lite penetrating the front end of the Chevrolet on the driver's side.

31. As the X-Lite pierced through the Chevrolet, it struck George Jansen and forced him out of the rear of the Chevrolet.

32. The Chevrolet traveled 175 feet along the X-Lite, with the X-Lite speared through the Chevrolet, before coming to a stop.

33. As a direct and proximate result of the acts and/or omissions of VHDL and/or the defects in the X-Lite described herein, George J. Jansen suffered devastating and fatal injuries including, but not limited to, blunt head trauma, scalp lacerations and abrasions, blunt injuries to his trunk and extremities, laceration and transection of the proximal thoracic aorta, lacerations to the kidney and liver, and death.

34. As a direct and proximate result of the acts and/or omissions of VHDL and/or the defects in the X-Lite described herein, George J. Jansen was killed and Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen have suffered damages for the pain and suffering of George J. Jansen endured between the time of injury and the time of death, pecuniary losses by reason of his death, funeral expenses and the loss of reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support all other damages allowed under law.

## STATUTE OF LIMITATIONS

35. George Jansen was killed on February 6, 2017, when his pickup truck collided with an X-Lite on Interstate 70 in Saline County, Missouri.

36. A wrongful death case was filed in Saline County, Missouri, against other entities on August 29, 2017, in case number 17SA-CV00698.

37. On October 23, 2018, a Third Amended Petition for Damages was filed naming VHDL as a defendant on three counts; wrongful death – strict liability; wrongful death – negligence; and lost chance of survival.

38. On February 5, 2021, the court granted VHDL's motion for summary judgement alleging lack of personal jurisdiction.

39. On September 27, 2022, the Missouri Court of Appeals of the Western District affirmed the trial court's summary judgement ruling, in case WD84369.

40. Plaintiffs' Motion to Transfer to the Missouri Supreme Court was denied on December 20, 2022.

41. Missouri Court of Appeals' judgement was affirmed on December 21, 2022.

42. Pursuant to RSMo § 516.230 Plaintiffs are afforded one year to commence a new action after a nonsuit. For the savings statute to apply, the original action must have been timely filed, the second cause of action must be the same as the first, and the plaintiff must have suffered a nonsuit in the first cause of action. Plaintiffs satisfy all three requirements.

    a. The original action was filed within a year and eight months of the incident date;

    b. This Complaint contains the same three counts against VHDL as Plaintiffs' Third Amended Petition for Damages; and

    c. Plaintiffs suffered a nonsuit as a result of a dismissal for lack of personal jurisdiction. The case was not decided on the merits.

## COUNT I: WRONGFUL DEATH – STRICT LIABILITY

43. Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 42 as is fully set forth herein.

44. VHDL designed, tested, certified, and licensed to Lindsay, the X-Lite in the ordinary course of business.

45. Prior to the incident on February 6, 2017, the X-Lite was in substantially the same condition as it was when it was designed, tested, certified, and/or licensed by VHDL.

46. At the time the X-Lite was designed by VHDL, and at the time of the events described herein, the X-Lite was in a defective condition and unreasonably dangerous when put to a reasonably anticipated use.

47. At the time the X-Lite was designed by VHDL, and at the time of the events described herein, the X-Lite was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

48. Specifically, the X-Lite was unreasonably dangerous to George Jansen and other consumers or users by reason of defects in its design and/or manufacture in the following respects:

    a. When installed, and struck by a motor vehicle such as George Jansen's, the end treatment and supporting posts did not collapse, telescope, or retract, nor did the bolts and attachments give way, but instead violently penetrated the front end of the striking vehicle;

    b. The X-Lite impact head and the attachment of the impact head to the guardrail system was inadequate to withstand impact from a vehicle under reasonably anticipated use;

c. The X-Lite did not contain adequate instructions and warnings for installation and/or maintenance instructions and was subject to failure when put to a reasonably anticipated use;

d. The X-Lite is not suited for accidents at interstate speeds; and

e. The X-Lite was not adequately tested.

49. At the time of the events described herein, the X-Lite was being used in a reasonably foreseeable manner anticipated and intended by VHDL.

50. The X-Lite was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

51. As a direct and proximate result of the defective condition of the X-Lite otherwise suffered, and Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen have suffered and will continue in the future to suffer the damages described above.

52. As a direct and proximate result of the X-Lite being sold without adequate instruction and warnings for installation, George Jansen suffered severe, enhanced, and fatal injuries beyond what he would have otherwise suffered, and Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen have suffered and will continue in the future to suffer the damages described above.

WHEREFORE Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen respectfully request that this Court enter judgement against Defendant Valmont Highway Distribution Limited on Count I of this Complaint and award a fair and reasonable amount to adequately compensate Plaintiffs for all damages, including prejudgment interest, interest on the judgment, the costs of this action, as well as such other and further relief as the Court deems just and proper.

## COUNT II: WRONGFUL DEATH – NEGLIGENCE

53. Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 52 as is fully set forth herein.

54. Defendant VHDL owed a duty of care that an ordinarily careful and prudent person would use under the same or similar circumstances, breached that duty of care and was thereby negligent in each of the following respects:

   a. VHDL failed to use ordinary care to design, develop, and test the X-Lite to be reasonably safe and to safely, properly, and adequately protect drivers by collapsing, telescoping, retracting or giving way when struck by a motor vehicle at foreseeable Interstate speeds and conditions;

   b. VHDL failed to use ordinary care to design, develop, and test the X-Lite impact head and its attachment to the guardrail system to withstand impact from a motor vehicle at foreseeable Interstate speeds and conditions;

   c. VHDL failed to provide adequate instructions and warnings for clear installation, repair, maintenance, and/or instruction manuals of the X-Lite thereby making the X-Lite dangerous when struck by a motor vehicle at foreseeable Interstate speeds and conditions;

   d. VHDL failed to disclose known problems and defects and provide additional and adequate warnings regarding proper installation and use on roadways with travel speeds over 62.2 mph following numerous serious collisions in 2016 wherein the X-Lite failed to perform as intended;

   e. VHDL marketed the X-Lite as safe;

f. VHDL manipulated, misrepresented, and/or concealed testing data pertaining to the X-Lite guardrail system;

g. VHDL failed to make timely corrections to the design of the X-Lite guardrail to correct the guardrail system;

h. VHDL failed to adequately identify and mitigate the hazards associated with the guardrail system in accordance with good engineering practices;

i. VHDL failed to comply with reasonable and necessary guidelines, including those of the Department of Transportation, the Federal Highway Administration, and/or the National Cooperative Highway Research Program ("NCHRP"); and

j. VHDL failed to design and/or manufacture the X-Lite end terminal according to the specifications approved by the Department of Transportation, the Federal Highway Administration, and/or the NCHRP.

55. As a direct and proximate result of the negligence described above, the X-Lite failed to collapse, telescope, retract or give way when struck by George Jansen's Chevrolet on February 6, 2017, andinstead, penetrated the Chevrolet.

56. As a direct and proximate result of the negligence described above, George Jansen suffered severe, enhanced, and fatal injuries beyond what he would have otherwise suffered, and Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen have suffered and will continue in the future to suffer the damages described above.

WHEREFORE Plaintiffs Emily Jansen, Allison Grant, Anne Scheu, and George M. Jansen respectfully request that this Court enter judgement against Defendant Valmont Highway Distribution Limited on Count II of this Complaint and award a fair and reasonable amount to adequately compensate Plaintiffs for all damages, including prejudgment interest, interest on the

judgment, the costs of this action, as well as such other and further relief as the Court deems just and proper.

## COUNT III: LOST CHANCE OF SURVIVAL

57. Plaintiff Emily Jansen as Personal Representative of the Estate of George Jansen incorporates herein by reference each and every allegation set forth in paragraphs 1 through 56 as if fully set forth herein.

58. As a direct and proximate result of VHDL's negligent conduct and the defective condition of the X-Lite and as set forth above, George Jansen lost any and all chance of recovery and/or survival from any preexisting medical issue he may have been experiencing at the time of the crash because the X-Lite's failure to protect George Jansen eliminated Mr. Jansen's opportunity for treatment and accelerated his death.

WHEREFORE Plaintiff Emily Jansen as Personal Representative of the Estate of George Jansen respectfully requests that this Court enter judgment against Defendant Valmont Highway Distribution Limited on Count III of this Complaint and award a fair and reasonable amount to adequately compensate Plaintiffs for all damages, including prejudgment interest, interest on the judgment, the costs of this action, as well as such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ *Bradley D. Kuhlman*
Bradley D. Kuhlman  # 42596
Kuhlman & Lucas, LLC
4700 Belleview Avenue, Suite 300
Kansas City, Missouri 64112
Telephone: (816) 799-0330
brad@kuhlmanlucas.com
**Attorney for Plaintiffs**